UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN J. RUIZ, | No. C 09-2968 MHP (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| MATHEW CATE, etc.; et al., | |
| Defendants. | |

## INTRODUCTION

Ruben J. Ruiz, an inmate at Pelican Bay State Prison, filed this pro se civil action under 42 U.S.C. § 1983. Before the court reviewed his complaint, he filed a first amended complaint which superseded the complaint. The first amended complaint is now before the court for review pursuant to 28 U.S.C. §1915A. Defendants' motion to screen the complaint and plaintiff's motion for appointment of counsel also are before the court for review.

## BACKGROUND

The first amended complaint concerns prison officials' refusal to release Ruiz from the security housing unit ("SHU") as an inactive gang affiliate. Ruiz currently is in administrative segregation ("ad-seg") in the SHU at Pelican Bay based on his validation as an affiliate of the EME prison gang in or about December 2000. He apparently has been in ad-seg since then. He does not complain about his initial placement or any particular periodic review of that placement, but instead about the inactivity review in 2008 during which prison officials determined whether to release him from ad-seg due to inactivity in connection with his gang.

Ruiz had an inactivity review in late 2008. Before the review, his cell was searched on October 21, 2008, and correctional officers retrieved from his cell a drawing containing the name of a validated gang affiliate named Jaurequi. Defendant J.M. Escobedo confiscated the drawing. See First Amended Complaint, ¶ 27. That drawing was later used as evidence of continued affiliation with the gang. In late October, Ruiz was given written notice of the sources against him and given an opportunity to submit his views on the matter. On October 27, 2008, a CDC-128 was prepared by correctional officer Newton and/or correctional lieutenant J. Beeson that stated that Ruiz's responses to the documents used in the inactivity review had no merit, and did not warrant further investigation. The memo stated that the author concluded that Ruiz was actively participating as an associate of the EME prison gang. See First Amended Complaint, Exh. E. As a result of being determined to be active, he was denied inactive status and was not released from the SHU. In addition to complaining about the decision denying him inactive status, he complains about the adequacy of the review of that decision and the quality of the information on which the decision-makers relied.

Ruiz asserts claims under the First, Eighth and Fourteenth Amendments of the U.S. Constitution, as well as various state law claims based on these alleged facts.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins,

487 U.S. 42, 48 (1988).

The first amended complaint does not state a claim for a due process violation. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Plaintiff's is not a case involving changes so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See id. at 477-87. A state most commonly restricts the power of prison officials by a two-step process: (1) establishing "substantive predicates" to govern official decisionmaking, i.e., "particularized standards or criteria to guide the [s]tate's decisionmakers," and then (2) requiring, "in explicitly mandatory language," that if the substantive predicates are met, a particular outcome must follow. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-64 (1989). An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence," Sandin, 515 U.S. at 484, 487.

There is some uncertainty as to whether Sandin has eliminated the requirement that state law narrowly restrict the power of prison officials to impose the deprivation and instead requires only that there be an interest of real substance to determine that an inmate has a right to due process before being deprived of that interest. In Sandin, the Court criticized earlier

3

1 decisions that focused on the language of the regulations rather than the nature of the interest
2 because they "encouraged prisoners to comb regulations in search of mandatory language on
3 which to base entitlements to various state-conferred privileges." Sandin, 515 U.S. at 481.
4 The language-based approach in which courts and prisoners searched for negative
5 implication from mandatory language in prisoner regulations had "strayed from the real
6 concerns undergirding the liberty protected by the Due Process Clause." Id. at 483.  States
7 "may under certain circumstances create liberty interests which are protected by the Due
8 Process Clause. . . . But these interests will be generally limited to freedom from restraint
9 which, while not exceeding the sentence in such an unexpected manner as to give rise to
10 protection by the Due Process Clause of its own force. . . nonetheless imposes atypical and
11 significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at
12 484.  See Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) ("focus of the liberty interest
13 inquiry is whether the challenged condition imposes an atypical and significant hardship");
14 Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996) (implying that Sandin reformulated
15 working definition of liberty interest to include only "real substance" prong).

16 While there may be some uncertainty as to whether the court needs to find mandatory
17 language creating the liberty interest, there is no uncertainty at all that an atypical and
18 significant hardship must exist to find that a liberty interest is protected by the Due Process
19 Clause.  Sandin made clear the need for an atypical and significant hardship and the
20 Supreme Court recently reiterated its adherence to Sandin's rule in Wilkinson v. Austin, 545
21 U.S. 209, 222-24 (2005).  Whether the due process analysis after Sandin has two prongs –
22 i.e., (1) an atypical and significant hardship and (2) a state-created interest due to mandatory
23 language – or just one prong, it is beyond dispute that at least the first prong is required.

24 The liberty interest in not being subjected to the harsh conditions of the Pelican Bay
25 SHU on an indefinite basis is not at issue in this claim, nor is the due process requirement
26 that inmates so confined receive periodic review of their SHU placement.  Rather, the claim
27 pertains to the review of Ruiz's case for his possible release from the SHU as an inactive
28 gang affiliate.

4

1    Ruiz did not have a protected liberty interest in having prison officials comply with
2 the state regulations regarding inactive gang affiliates.  Where, as here, the conditions of
3 confinement did not change at all -- Ruiz was in the SHU before, during and after defendants'
4 activities -- there was no imposition of a restraint that imposed an atypical and significant
5 hardship on the inmate in relation to the ordinary incidents of prison life.  (He also does not
6 allege that the decision inevitably affected the duration of his confinement, but if it did the
7 claim would have to be pursued in a habeas action.)  His claim fails on the first prong of
8 Sandin because he was not deprived of an interest of real substance.
9    If the due process analysis has two prongs after Sandin, Ruiz's claim would fail also
10 on the second prong because he has misread the applicable regulations and ignored their
11 discretionary nature.  The regulations permit, but do not require, the review of the
12 active/inactive status of an inmate and permit, but do not require, the release from the SHU
13 of an inmate determined to be an inactive gang member or associate.  "As provided at section
14 3378(e), the Departmental Review Board (DRB) may authorize SHU release for prison gang
15 members or associates categorized as inactive.  The term inactive means that the inmate has
16 not been involved in gang activity for a minimum of six (6) years. . . .  The DRB is
17 authorized to retain an inactive gang member or associate in a SHU based on the inmate's
18 past or present level of influence in the gang, history of misconduct, history of criminal
19 activity, or other factors indicating that the inmate poses a threat to other inmates or
20 institutional security."  15 Cal. Code Regs. § 3341.5(c)(5) (emphasis added).  Section
21 3378(e), in turn, provides:  "An inmate housed in a security housing unit (SHU) as a gang
22 member or associate may be considered for review of inactive status by the Department
23 Review Board when the inmate has not been identified as having been involved in gang
24 activity for a minimum of six (6) years."  Section 3341.5 does not establish substantive
25 predicates and does not require in explicitly mandatory language that if certain substantive
26 predicates are met, a particular outcome must follow.  See Kentucky Dep't of Corrections v.
27 Thompson, 490 U.S. at 461-64.    The regulation's permissive language gave Ruiz no
28 constitutionally protected right to a review of his file or to release from the SHU based on his

5

gang inactivity. Section 3341.5(c)(5) allows the retention in the SHU of even an inactive gang member or associate. The regulation is discretionary, not mandatory, and therefore does not create a protected liberty interest and cannot be the basis for a federal due process claim. This means that Ruiz's claim would fail on the second prong of the due process analysis, if that prong still exists after Sandin.

Ruiz also claims that his Eighth Amendment and Fourteenth Amendment rights were violated by the imposition of a disproportionate SHU term. This claim has no merit for two reasons. First, the decision to place an inmate in the SHU due to gang affiliation is an administrative matter rather than a disciplinary matter. "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468 (1983); cf. Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (contemporary standards of decency are not violated by classification programs which pursue "important and laudable" goals and are instituted under the state's authority to operate correctional facilities). An indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995). Second, the overall conditions of the SHU cannot be challenged in this action because, as an inmate in the SHU, Ruiz is a member of plaintiff class in the Madrid v. Gomez class action litigation concerning the SHU conditions. Judge Henderson in that case has ruled that the overall conditions of the SHU do not violate the Eighth Amendment for the non-mentally ill inmates therein. See Madrid v. Gomez, 889 F. Supp. 1146, 1227-30, 1260-65 (N.D. Cal. 1995). Ruiz may not relitigate the claim individually.

Ruiz also contends that the use of artwork confiscated from his cell in the gang inactivity review violated his First Amendment rights. The artwork was signed by inmate Jaurequi, a validated gang member. See First Amended Complaint, ¶ 27. A prisoner possess only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417

6

U.S. 817, 822 (1974). Prison gangs in particular are fundamentally incompatible with inmate and staff safety. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 227 (2005); Westefer v. Snyder, 422 F.3d 570, 575 (7th Cir. 2005) (prison gangs are a manifest threat to prison order and discipline; contention that prisoner has a First Amendment right to belong to a gang fails to state a claim); Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir. 1996) (prison officials' actions affecting First Amendment rights are permissible when reasonably related to legitimate interest of prison security). The use of the artwork with a validated gang member's name on it for purposes of determining whether Ruiz was inactive in the gang did not violate his First Amendment rights.

Ruiz also asserts claims related to the handling of his inmate appeals. Interests protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). There is no constitutional right to a prison administrative appeal or grievance system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). The State of California has not created a protected interest in an administrative appeal system in prison or the county jails. California Code of Regulations, title 15 sections 1073 and 3084.1 grant prisoners in the county jails and state prisons a purely procedural right: the right to have an administrative appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also Antonelli, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Ruiz had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to handle it in a particular way therefore did not

amount to a violation of his right to due process.

The court has determined that none of the § 1983 claims state a claim upon which relief may be granted and dismissed them. The court declines to exercise supplemental jurisdiction over the state law claims remaining. The state law claims are dismissed without prejudice to Ruiz filing an action in state court to pursue those claims there.

In light of the dismissal of the complaint without leave to amend, the motion for appointment of counsel is DENIED. (Docket # 3.)

Defendants' motion for the court to screen the complaint under 28 U.S.C. § 1915A is GRANTED; this order does the required screening. (Docket # 4.)

## CONCLUSION

For the foregoing reasons, the first amended complaint is DISMISSED for failure to state a claim upon which relief may be granted. Further leave to amend will not be granted because it would be futile. The clerk shall close the file.

IT IS SO ORDERED.

Dated: February 9, 2010

_____
Marilyn Hall Patel
United States District Judge